UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | **Filed / Docketed** |
| | ) | Case No. 04-11677-R  **December 27, 2006** |
| HALE-HALSELL CO., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| SANDRA L. HAWK, PERSONAL | ) | |
| REPRESENTATIVE OF THE | ) | |
| ESTATE OF ROBERT D. HAWK, | ) | |
| SR., DECEASED, AND SANDRA L. | ) | |
| HAWK, INDIVIDUALLY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-1153-R |
| | ) | |
| HALE-HALSELL COMPANY, | ) | |
| THE F&M BANK & TRUST | ) | |
| COMPANY, and CITIZENS UNION | ) | |
| STATE BANK & TRUST f/k/a | ) | |
| MISSOURI STATE BANK & TRUST | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS OF | ) | |
| HALE-HALSELL COMPANY, | ) | |
| | ) | |
| Intervenor. | ) | |

## MEMORANDUM OPINION

Before the Court is Citizens Union State Bank & Trust's Motion for Summary Judgment (Adv. Doc. 65) and Brief in Support of Motion for Summary Judgment (Adv. Doc. 66) filed on August 17, 2006 ("Citizens' Motion"); the Response of Hale-Halsell Company to Motion for Summary Judgment of Citizens Union State Bank & Trust (Adv. Doc. 81)

("Hale Response") filed September 8, 2006; Plaintiffs' Response and Objection to Citizens Union Bank & Trust's Motion for Summary Judgment (Adv. Doc. 82) filed by Plaintiffs Sandra L. Hawk, Personal Representative of the Estate of Robert D. Hawk, Sr. ("Hawk Estate") and Sandra L. Hawk individually ("Mrs. Hawk") on September 8, 2006 ("Hawk Response"); Citizens Union Bank & Trust's Reply to Plaintiffs' Response and Objection to Motion for Summary Judgment (Adv. Doc. 93) filed on September 18, 2006 ("Citizens' Reply"); the Supplemental Response and Objection to the Defendant, Citizens Union Bank & Trust's Motion for Summary Judgment (Adv. Doc. 99) filed by the Hawk Estate and Mrs. Hawk on September 27, 2006 ("Supplemental Response"); Citizens Union Bank & Trust's Reply to Plaintiff's [sic] Supplemental Response and Objection to Motion for Summary Judgment (Adv. Doc. 106) filed on October 6, 2006 ("Reply to Supplement"); and the Joint Stipulation of Parties With Respect to Citizens Union State Bank & Trust (Adv. Doc. 141) ("Joint Stipulation").[1]

**I.     Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (B), (C), (K) and (O);  and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

---

[1]The Joint Stipulation is a stipulation by and among Defendants Hale-Halsell Company, The F&M Bank & Trust Company and Citizens Union State Bank and Intervenor The Official Committee of Unsecured Creditors of Hale-Halsell Company (the "Committee").  Neither Mrs. Hawk nor the Hawk Estate are parties to the Joint Stipulation. In the Joint Stipulation, the parties stipulate to their respective interests and priorities in the proceeds of the Sun Life insurance policy assuming that the Hawk Estate and Mrs. Hawk have no interest or lien in such proceeds.

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit." Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000), *citing* EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000). "An issue is 'genuine' if 'a rational jur[or] could find in favor of the nomoving party on the evidence presented." Id., *quoting* Horizon, 220 F.3d at 1190.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out a lack of evidence for the other party on an essential element of that party's claim. See Adams, 233 F.3d at 1246, *citing* Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Spaulding, 279 F.3d at 904, *citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex, 477 U.S. at 324.

3

The nonmoving party may not simply rest upon its pleadings to satisfy its burden. <u>Liberty Lobby</u>, 477 U.S. at 256. Rather the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000), *quoting* <u>Adler</u>, 144 F.3d at 671. To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." <u>Adams</u>, 233 F.3d at 1246.

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Liberty Lobby</u>, 477 U.S. at 249. Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party. <u>See Adams</u>, 233 F.3d at 1246. However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587. Conversely, even where a movant's facts are undisputed, if two reasonable factfinders could reach different conclusions or "ultimate inferences" from the undisputed facts, summary judgment is not warranted. <u>See Luckett v. Bethlehem Steel Corp.</u>, 618 F.2d 1373, 1382 (10th Cir. 1980).

**III.    Contentions of the Parties**

In this adversary proceeding, the parties seek a determination as to who is entitled to the death benefits generated by two life insurance policies on the life of Robert D. Hawk, Sr. ("Mr. Hawk"), deceased, which were purchased by the debtor, Hale-Halsell Company ("Hale") prior to the bankruptcy. Hale claims that the death benefits are assets of the bankruptcy estate, as Hale was the owner and named beneficiary of the policies. Citizens Union State Bank & Trust ("Citizens") claims an interest in one of the policies, the policy issued by Sun Life Assurance Company of Canada ( the "Sun Life Policy") and its proceeds, either as Hale's assignee or as a secured creditor of Hale. Another Defendant, F&M Bank & Trust Company ("F&M"), claims a security interest in both the Sun Life Policy and a policy issued by Transamerica Occidental Life Insurance Company (the "Transamerica Policy"). Hale agrees that Citizens has a security interest in the Sun Life Policy, and that F&M has a security interest in both policies, and that the banks' security interests are superior to any claims of the Hawk Estate and Mrs. Hawk. F&M agrees that Citizens' interest in the Sun Life Policy is superior to F&M's interest.

The Hawk Estate and Mrs. Hawk contend that prior to Mr. Hawk's death, Hale's insurable interest in the life of Mr. Hawk terminated which triggered an obligation on behalf of Hale to offer to sell, transfer or assign the policies to Mr. Hawk pursuant to 36 O.S. § 3604(A)(2) ("Section 3604(A)(2)"). Because Hale did not offer the policies to Mr. Hawk upon the alleged termination of Hale's insurable interest in Mr. Hawk's life, the Hawk Estate contends that (1) Hale should be compelled to tender the policies (or their proceeds) to the

Hawk Estate in exchange for the cash value of the policies, if any, at the time Hale no longer had an insurable interest or (2) the Court should deem that a tender and assignment of the policies (and their proceeds) to the Hawk Estate has occurred by operation of law. The Hawk Estate also claims that Citizens' security interest attaches only to the consideration (cash value) that Hale would receive from the Hawk Estate as a result of the tender of the policy and proceeds to the Hawk Estate. In the alternative, the Hawk Estate and Mrs. Hawk contend that the Court should reform the policies naming Mrs. Hawk as the beneficiary of the policies because it was Mr. Hawk's intention to name her as beneficiary upon the tender of the policies. Amended Complaint (Adv. Doc. 49) at ¶¶ 11-14. Further in the alternative, Mrs. Hawk individually claims an "equitable lien" on the proceeds of the policies, asserting that as beneficiary under a Senior Management Retirement Agreement entered into by Hale and Mr. Hawk (the "Retirement Agreement"), she is entitled to one-half of Mr. Hawk's monthly salary for 120 months, and that such obligation was to be funded by the life insurance policies. Amended Complaint at ¶ 18. As the named beneficiary under the Retirement Agreement, Mrs. Hawk also seeks a judgment for the benefits promised to Mr. Hawk in the Retirement Agreement regardless of whether she can establish an equitable lien on the proceeds. Id. at ¶ 19.

Hale, F&M and Citizens contend Hale's insurable interest in Mr. Hawk's life did not terminate prior to his death, and therefore Hale never had an obligation to offer the policies to Mr. Hawk pursuant to Section 3604(A)(2). F&M filed a Motion for Summary Judgment (Adv. Doc. 50) (the "F&M Motion") in which it requested, among other things, that the

Court conclude that the undisputed facts establish that Hale's insurable interest in Mr. Hawk's life did not terminate prior to Mr. Hawk's death and therefore F&M's security interest in both the Sun Life Policy and the Transamerica Policy was superior to any claim of the Hawk Estate and Mrs. Hawk, and further, that Mrs. Hawk did not have an equitable lien on the policies or proceeds. The F&M Motion was granted and a Judgment in favor of F&M has been entered.

With respect to the claims of the Hawk Estate and Mrs. Hawk, Citizens seeks judgment declaring that the Hawk Estate and Mrs. Hawk have no interest in the Sun Life Policy and its proceeds and that Mrs. Hawk does not have an equitable lien in the Sun Life Policy or its proceeds. With respect to Defendants Hale and F&M, Citizens seeks a judgment declaring its interest in the Sun Life Policy and its proceeds superior to the interests of Hale and F&M.[2] Because Citizens is not a party to the Retirement Agreement, Mrs. Hawk's claim for benefits under the Retirement Agreement does not state a cause of action against Citizens.

**IV.   Undisputed Material Facts**

Citizens is the holder of a Promissory Note (together with all modifications and renewals, the "Note") executed and delivered by Hale, as of October 5, 1998, in consideration of a loan by Citizens to Hale, wherein Hale promised to pay Citizens the

---

[2] In Citizens' Motion, Citizens had also sought allowance of its secured claim. The amount of its secured claim is in dispute, however. Citizens has withdrawn its request for such relief in this adversary proceeding (see Joint Stipulation of the Parties With Respect to Citizens Union State Bank, Adv. Doc. 141, at 3, n.1) and has filed a motion for determination and allowance of its secured claim in the main bankruptcy case. Citizens Union State Bank & Trust's Motion for Allowance of Secured Claim and Notice of Opportunity for Hearing, Main Case Doc. 1854.

principal sum of $2,000,000, with interest thereon, as more fully set out in the Note. Citizens' Motion at 5, ¶ 1; Hawk Response at 1, ¶ 1; Hale Response at 1-2, ¶ 1; Joint Stipulation at 2, ¶ 2.  As security for the repayment of all obligations under the Note, Hale executed and delivered to Citizens an Assignment of Policy as Collateral Security dated May 21, 2002 (the "Transamerica Collateral Assignment"), whereby Hale assigned to Citizens certain rights under an insurance policy underwritten by Transamerica Occidental Life Insurance Company on the life of Robert D. Hawk, Sr. ("Mr. Hawk") in the face amount of $5,000,000 (the "Assigned Transamerica Policy").  Citizens' Motion at 5, ¶ 2 and Citizens Exh. A-2; Hawk Response at 1, ¶ 2; Hale Response at 2, ¶ 2; Joint Stipulation at 2, ¶ 3.  On or about June 12, 2002, Transamerica recorded the Transamerica Collateral Assignment. Citizens' Motion at 6, ¶ 3; Hawk Response at 1, ¶ 3; Hale Response at 1-2, ¶ 1; Joint Stipulation at 2, ¶ 4.   Mr. Hawk executed the Note (and each of the modifications and renewals thereto) and the Transamerica Collateral Assignment as Chairman of the Board and Chief Executive Officer of Hale.  Citizens' Motion at 6, ¶ 4; Hawk Response at 1, ¶ 4; Hale Response at 1-2, ¶ 1.  The last modification of the Note included a schedule of collateral, consisting of a list of insurance policies that had been assigned, which included the Transamerica Collateral Assignment.  Citizens' Motion Exh. A-1.

<u>The Sun Life Policy</u>

On or about December 29, 2003, Sun Life Assurance Company of Canada ("Sun Life") issued Policy No. 020094614, the Sun Life Policy, which insured the life of Mr. Hawk in the face amount of $5,000,000.  Citizens' Motion at 6, ¶¶ 5-6; Hawk Response at 1, ¶¶ 5-6;

8

Hale Response at 1-2, ¶ 1; Joint Stipulation at 2, ¶ 5. The Application for Life Insurance (the "Sun Life Application") concerning the Sun Life Policy identified Mr. Hawk as the insured and Hale as the owner and beneficiary of the Sun Life Policy. Citizens' Motion at 6, ¶¶ 7-8, Affidavit of Michael Owens, Citizens' Exh. C, at ¶ 18; Hawk Response at 1, ¶¶ 7 (¶ 8 not controverted with admissible evidence);[3] Hale Response at 1-2, ¶ 1. In the application for life insurance, Hale stated that the purpose of the policy was "Key Person" insurance. Citizens' Motion at 6, ¶ 9; Hawk Response at 1, ¶ 9; Hale Response at 1-2, ¶ 1. On the date the Sun Life Policy was issued, Mr. Hawk was the Chairman of the Board and Chief Executive Officer of Hale. Citizens' Motion at 7, ¶ 10; Hawk Response at 1, ¶ 10; Hale Response at 1-2, ¶ 1. Hale paid all of the premiums due on the Sun Life Policy and its predecessor policies (an amount in excess of $1,000,000) and no premiums on such policies were paid by Mr. Hawk. Citizens' Motion at 8, ¶ 18; Hawk Response at 2, ¶ 18; Hale Response at 1-2, ¶ 1.

<u>Citizens' Interest in the Sun Life Policy</u>

By letter dated January 20, 2004, Hale notified Citizens that it had replaced the Assigned Transamerica Policy with the Sun Life Policy, and delivered to Citizens an Assignment as Collateral Security Form dated January 20, 2004, executed by Hale (the "Sun Life Collateral Assignment"). Citizens' Motion at 7, ¶ 11, and Citizens Exh. A-4; Hawk

---

[3]Although in its response to Citizens' Motion, the Hawk Estate denied that Hale was beneficiary of the Sun Life Policy, the Hawk Estate admitted that Hale was the beneficiary of the Sun Life Policy in its response to F&M's Motion for Summary Judgment. F&M Motion at 9, ¶ 43; Hawk Response to F&M Motion (Adv. Doc. 71) at 7, ¶ 43. <u>See also</u> Sun Life Application (labeled "Creditor Hawk Exhibit 62") attached to Citizens' Reply, at 64.

Response at 1, ¶ 11; Hale Response at 1-2, ¶ 1; Joint Stipulation at 2, ¶ 6.  On or about January 20, 2004, Sun Life recorded the Sun Life Collateral Assignment.  Citizens' Motion at 7, ¶ 12; Hawk Response at 1, ¶ 12; Hale Response at 1-2, ¶ 1; Joint Stipulation at 3, ¶ 7.

The Sun Life Collateral Assignment states simply that "[f]or value received, and by way of security for all present and future indebtedness, [Hale], the owner(s) of the [Sun Life Policy], hereby transfer(s) and assign such policies to [Citizens]."  Sun Life Collateral Assignment, Citizens Exh. A-4.  The assignment is signed by Robert D. Hawk, Jr., President, and Paul A. Stephens, Sr. Vice President, on behalf of Hale.

Hale, F&M, Citizens and the Committee agree that as a result of the execution, delivery and recordation of the Sun Life Collateral Assignment, Citizens holds an interest in the Sun Life Policy (and proceeds thereof) that is superior to any interest of Hale, F&M and the Committee, and that any interest of Hale, F&M or the Committee in the Sun Life Policy (and proceeds thereof) is subject to satisfaction in full of Citizens' claim against Hale (as such claim is defined below).  Joint Stipulation at 3, ¶ 10, and at 4, ¶ B.

There is no evidence that Citizens had an insurable interest in Mr. Hawk's life at or after the execution, delivery and recordation of the Sun Life Collateral Assignment.  Hawk Response at 10, ¶ 14; Citizens' Reply at 21, ¶ 14.  Citizens did not offer to sell, transfer or assign the Sun Life Policy to Mr. Hawk or the Hawk Estate in exchange for the cash surrender value of the policy.  Hawk Response at 10, ¶ 15; Citizens' Reply at 21, ¶ 15.

Hale's Bankruptcy

On March 22, 2004 (the "Petition Date"), Hale voluntary commenced a Chapter 11 bankruptcy case in this district. Citizens' Motion at 7, ¶ 14; Hawk Response at 1, ¶ 14; Hale Response at 1-2, ¶ 1. Mr. Hawk executed the voluntary petition as Chairman and Chief Executive Officer of Hale, declaring under penalty of perjury that the information he provided in the petition was true and correct, and that he had been authorized to file the petition on behalf of Hale. Citizens' Motion at 7-8, ¶ 15; Hawk Response at 1, ¶ 15; Hale Response at 1-2, ¶ 1. On the Petition Date, Hale was the owner of the Sun Life Policy. Citizens' Motion at 8, ¶ 17; Hawk Response at 2, ¶ 17; Hale Response at 1-2, ¶ 1.

Citizens' Claim Against Hale

On or about August 27, 2004, Citizens filed a proof of claim, asserting a secured claim against Hale in the amount of $1,503,215.16 plus post-petition interest, costs, fees and other charges (the "Citizens Claim"). Citizens' Motion at 9, ¶ 25; Hawk Response at 2, ¶ 25; Joint Stipulation at 3, ¶ 9. Hale, F&M, Citizens and the Committee agree that as of November 30, 2006, Citizens has an allowed secured claim of $1,728,757.37, consisting of (a) unpaid principal balance of $1,450,000.00; and (b) accrued, unpaid interest (calculated at the pre-acceleration rate of interest provided in the Note) of $278,757.37 (currently $342.36 per diem). Id. The remainder of the Citizens Claim is disputed by Hale and shall be determined pursuant to Citizens Union State Bank & Trust's Motion for Allowance of Secured Claim and Notice of Opportunity for Hearing (Main Case Doc. 1854).

F&M's Interest in the Sun Life Policy

Pursuant to the "Order Granting the Joint Motion for Order Authorizing and Approving a Settlement Agreement Among and Between Git-N-Go, Inc., Hale-Halsell Company, 4 Front Petroleum, Inc., The F&M Bank & Trust Company, and Citgo Petroleum Corporation and Notice of Opportunity for Hearing" dated September 1, 2005, the Court granted F&M a security interest in the Sun Life Policy. Joint Stipulation at 3, ¶ 8. F&M holds a second priority perfected lien or security interest in the Sun Life Policy that is superior to any interest of Hale and the Committee, but is subordinate to Citizens' interest in the Sun Life Policy (and proceeds thereof). Joint Stipulation at 4, ¶ B. Hale's and the Committee's interest in the Sun Life Policy (and proceeds thereof) is subject to the satisfaction of the Citizens Claim and F&M's allowed secured claim. Id.

The Sun Life Policy Proceeds

Mr. Hawk died on March 29, 2006. Citizens' Motion at 9, ¶ 22; Hawk Response at 2, ¶ 22; Hale Response at 1-2, ¶ 1. Sun Life issued a check payable to Hale and Citizens in the amount of $5,036,301.37, representing the death benefit payable under the Sun Life Policy. Citizens' Motion at 9, ¶ 24; Hawk Response at 2, ¶ 24; Hale Response at 1-2, ¶ 1. Pursuant to stipulation by the parties and the Agreed Order Escrowing Life Insurance Proceeds entered on August 11, 2006, the death benefit proceeds were deposited by Hale in an escrow account, "subject to the rights, interests, liens and claims (and their relative priorities) of Mrs. Hawk, F&M Bank, Citizens Union and Hale in such funds" and Hale may

not disburse the proceeds except upon further order of this Court. Agreed Order Escrowing Life Insurance Proceeds (Adv. Doc. 63).

<u>Mrs. Hawk's and the Hawk Estate's Interest in the Sun Life Policy and Proceeds</u>

On December 8, 2006, the Court entered a Memorandum Opinion granting F&M's Motion for Summary Judgment ("F&M Opinion"), in which the Court concluded from the undisputed facts—

> Because Hale had a "lawful and substantial economic interest in having the life, health, or bodily safety" of Mr. Hawk continue, and because Mr. Hawk was a director, employee and/or a retired employee of Hale until the date of his death, Hale's insurable interest in the life of Mr. Hawk did not terminate prior to his death, and therefore no obligation to offer or tender the policies to Mr. Hawk under Section 3604(A)(2) arose. Mr. Hawk had no legal or equitable interest in the policies prior to his death.

F&M Opinion (Adv. Doc. 122) at 36. A Final Judgment was entered in favor of F&M and against the Hawk Estate on Count One of the Amended Complaint and on F&M's Counterclaim, and in favor of F&M and against Mrs. Hawk on the equitable lien claim asserted by Mrs. Hawk in Count Two of the Amended Complaint.[4]

---

[4] In light of the Court's prior determination, in the F&M Opinion, that Hale retained an insurable interest in Mr. Hawk's life until his death, certain facts asserted by the Hawk Estate in its "Statement of Additional Relevant Facts" that are disputed by Citizens (or that are not controverted by Citizens with admissible evidence), do not preclude summary judgment because they were considered in the F&M Opinion, or because they are not material to issues remaining unadjudicated after the F&M Opinion. See Hawk Response at 2-11 ("Statement of Additional Relevant Facts"). These include Statement of Additional Relevant Facts ¶¶ 1, (cash surrender values of policies), 2 (whether Mr. Hawk was liable to F&M on a Guaranty), 6(a) - (*l*) (facts upon which the Hawk Estate relied in establishing Hale's lack of insurable interest, which the Court found in the F&M Opinion to be either not material or not sufficient to establish that proposition), 7 (facts concerning the Transamerica Policy), 10, 12, 16 (whether Mrs. Hawk was designated beneficiary under the Senior Management Retirement Agreement), 17 and 18 (whether Mr. Hawk or the Hawk Estate

13

## V.      Conclusions of law

In the F&M Opinion, the Court determined that because the undisputed facts established that Hale retained an insurable interest in the life of Mr. Hawk until his death, Hale was never obligated to offer to sell, transfer or assign the Sun Life Policy to Mr. Hawk or the Hawk Estate, and therefore the Hawk Estate and Mrs. Hawk have no legal or equitable interest the Sun Life Policy of its proceeds. The Court further concluded that Mrs. Hawk has no equitable lien on the policy or its proceeds.

The only legal issue raised by the Hawk Estate and Mrs. Hawk in its opposition to Citizens' Motion that was not addressed in the F&M Opinion concerns whether Citizens, as assignee, had any obligation under Section 3604(A)(2) of title 36 of the Oklahoma Statutes

---

were willing and able to purchase the Sun Life Policy upon alleged termination of insurable interest), and 19 (regarding offer of third parties to purchase policy and cash surrender value).

The Hawk Estate and Mrs. Hawk also asserted additional facts in the First Supplemental Response ("Supplemental Facts") that were already considered by the Court in the F&M Opinion in determining that Hale's insurable interest did not terminate prior to Mr. Hawk's death.

In addition, in its Statement of Additional Relevant Facts, the Hawk Estate alleges certain statements that are legal conclusions rather than facts and therefore were not considered for the purpose of determining whether any disputed material facts exist. These include Statement of Additional Relevant Facts ¶¶ 3, 4, 5, 6 (allegation that insurable interest terminated), 9, 13 (that Citizens "owned" the Sun Life Policy; the Court also disregards Citizens' response that it held "legal title" to the Sun Life Policy; both statements are legal conclusions); portions of 15 and 19 (allegation that Hale's insurable interest terminated).

Paragraph 11 of the Hawk Estate's Statement of Additional Relevant Facts, which refers to the treatment of the Retirement Agreement in the Committee's proposed plan of liquidation, was disregarded due to the elimination of the language quoted therein when the Committee amended its plan. See Hawk Response at 9; Main Case Doc. 1679 (Third Amended Plan of Liquidation).

to offer to sell, transfer or assign the Sun Life Policy to Mr. Hawk.[5]  See Citizens' Motion at 11-12; Hawk Response at 13-15.  The Court concludes that Citizens' interest in the Sun Life Policy did not divest Hale of ownership of the policy.

In Prudential Ins. Co. v. Glass, 1998 OK 52, 959 P.2d 586, the Oklahoma Supreme Court considered the distinction between an unconditional assignment of a life insurance policy and an assignment to secure repayment of a debt.  The court explained–

> It has long been understood a life insurance policy can be passed by assignment. 2A APPLEMAN, INSURANCE LAW AND PRACTICE § 1255 at 457 (1941).  This Court has expressly held the owner of a life insurance policy, assignable at his will, may assign all his/her interest in the policy for monetary consideration. [citation omitted].   No particular form of words is essential to effect an assignment of a life insurance policy—any writing indicating an intention to pass the interest in the policy's proceeds to the assignee is sufficient. [citation omitted].  Where there is an unconditional

---

[5]Section 3604(A)(2) of title 36 of the Oklahoma Statutes provides–

In the absence of an agreement to the contrary, [with respect to] a policy procured and owned by a corporation, partnership, association, limited liability company, or other legal entity on the life or body of an officer, director, manager, member, or employee, other than a sole proprietor, upon the termination of the insurable interest, the owner of the policy shall, if permitted by the terms of the policy, offer to sell, transfer, or assign the policy to the insured in exchange for the cash surrender value of the policy or, if there is no cash value, in exchange for an amount equal to the total of any premiums paid for the policy, minus any dividends received, plus interest. This offer shall be made in writing to the insured after termination of the insurable interest. The offer shall state the time for acceptance which shall not be less than thirty (30) days after receipt of the offer by the insured. If the insured rejects the offer or fails to accept the offer in the time provided, the owner of the policy may continue to own the policy subject to its terms.

36 O.S. § 3604(A)(2).

15

assignment, the insured [owner][6] is ordinarily deemed to be divested of all right and title to the policy and the beneficial interest is vested in the assignee. [citation omitted]. In addition to an unconditional assignment, however, a policy of life insurance may also be pledged as collateral security for a debt . . . and even when a writing appears to be an absolute assignment on its face, whether the assignment was made in consideration for the repayment of funds advanced to the insured [owner] by the assignee is generally considered a question of fact and the assignee's interest extends no farther than necessary to satisfy repayment of the debt. Barry v. Hubbard, 195 Okla. 112, 155 P.2d 512, 515 (1944). The assignor, and consequently, his designated beneficiary, still have an interest in a policy's proceeds that remains after the debt is satisfied. Id.; Duty v. First State Bank of Oregon, . . . 693 P.2d 1308, 1313 (1985), . . . *quoting* Males v. N.Y. Life Ins. Co., 48 A.D.2d 50, 367 N.Y.S.2d 575 (1975) (assignment of a life insurance policy as collateral security does not divest the insured [owner] or the beneficiary of their general interest in the policy, but merely creates a lien in favor of the assignee to the extent of the debt owed–once the debt is paid, the insurance continues in effect as if there had been no assignment). Finally, . . . an assignee or pledgee of a life insurance policy in which the insured [owner] reserves the right to change the beneficiary has a right to the policy's proceeds superior to that of the beneficiary to the extent of the underlying debt.

Glass, 959 P.2d at 591-92.

The Sun Life Collateral Assignment, which is entitled "Assignment as Collateral Security Form," unambiguously states that "[f]or value received, and by way of security for all present and future indebtedness, [Hale], the owner(s) of the [Sun Life Policy], hereby transfer(s) and assign such policies to [Citizens]." It does not purport to be an unconditional assignment of all Hale's ownership rights under the Sun Life Policy (for example, it does not assign Hale's right to designate a beneficiary). Accordingly, the Sun Life Collateral Assignment did not divest Hale of its ownership interest in the policy, but merely created a

---

[6]In the Glass case, the court frequently refers to the owner of the life insurance policy as the "insured" because the owner and insured were the same person.

16

lien in favor of Citizens to the extent of the debt owed by Hale.  The Court concludes that Citizens did not own the Sun Life Policy and thus did not have the *right* to offer to sell, transfer or assign the Sun Life Policy to Mr. Hawk pursuant to Section 3604(A)(2), and therefore could not have had any obligation to do so.

## VI.     Conclusion

For these reasons, and the reasons stated in the F&M Opinion, the Court concludes that Citizens has a valid and perfected security interest in the Sun Life Policy (and its proceeds) which is superior to any claim by the Hawk Estate.  Judgment should be entered in favor of Citizens and against the Hawk Estate on Count One of the Amended Complaint and in favor of Citizens on Citizens' Counterclaim.  Judgment should also be entered in favor of Citizens and against the Mrs. Hawk on the equitable lien claim asserted in Count Two of the Amended Complaint.

Further, pursuant to the Joint Stipulation, judgment should be entered in favor of Citizens on its Crossclaims against Hale, the Committee and F&M, determining that Citizens has a valid and perfected security interest in the Sun Life Policy (and its proceeds) which is superior to the interests of Hale, the Committee and F&M.  The amount of Citizens allowed secured claim shall be determined in the main case pursuant to Citizens Union State Bank & Trust's Motion for Allowance of Secured Claim and Notice of Opportunity for Hearing, Main Case Doc. 1854.

Pursuant to Bankruptcy Rule 7054 and Rule 54(b) of the Federal Rules of Civil Procedure, the Court concludes that notwithstanding that the claims by and against other

parties to this litigation have not been adjudicated, there is no just reason to delay entry of a final judgment in favor of Citizens. Thus, a separate judgment in favor of Citizens will be entered contemporaneously with this Memorandum Opinion.

**SO ORDERED** this 27th day of December, 2006.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT